1  JOHN P. REITMAN (State Bar No. 80579)
   jreitman@landaufirm.com
2  MONICA RIEDER (State Bar No. 263250)
   mrieder@landaufirm.com
3  JACK A. REITMAN (State Bar No. 283746)
   jareitman@landaufirm.com
4  LANDAU LAW LLP
   1880 Century Park East, Suite 1101
5  Los Angeles, California 90067
   Telephone: (310) 557-0050
6  Facsimile: (310) 557-0056

7  Special Litigation Attorneys for
   Plaintiff Richard A. Marshack,
8  Chapter 7 Trustee for Eagan Avenatti, LLP

9

10              **UNITED STATES BANKRUPTCY COURT**

11     **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| 12  In re | Case No. 8:19-bk-13560-SC |
| 13  EAGAN AVENATTI, LLP | Chapter 7 |
| 14              Debtor | Adv. No. 8:20-ap-01147-SC |
| 15 | **SUMMONS SERVICE EXECUTED RE SERVICE OF:** |
| 16  RICHARD A. MARSHACK, CHAPTER 7 | |
| 17  TRUSTEE FOR EAGAN AVENATTI, LLP, | **1) COMPLAINT;** |
| 18              Plaintiff, | **2) EARLY MEETING OF COUNSEL AND STATUS CONFERENCE INSTRUCTIONS; SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004−1]; AND** |
| 19  v. | |
| 20  CASCADE CAPITAL GROUP, LLC, a Delaware limited liability company, | |
| 21 | **3) PLAINTIFF'S NOTICE OF REQUIRED COMPLIANCE WITH FRBP 7026 AND LBR 7026-1** |
| 22              Defendant. | |
| 23 | **Status Conference Date and Time:** |
| 24 | Date:  January 6, 2021 |
| 25 | Time:  1:30 p.m. |
|   | Place:  Courtroom 5C |
| 26 |          411 W Fourth St. |
| 27 |          Santa Ana, CA 92701 |
| 28 | |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiff Richard A. Marshack, Chapter 7 Trustee submits the Declaration of Anastasia Vedrova reflecting the Plaintiff's service of:

1.      Complaint for Avoidance and Recovery of Voidable Transfers;

2.      Early Meeting of Counsel and Status Conference Instructions; Summons and Notice of Status Conference; and

3.      Notice of Required Compliance with Federal Rule of Bankruptcy Procedure 7026 and Local Bankruptcy Rule 7026-1.

Dated: October 21, 2020            LANDAU LAW LLP


By\_\_\_\_\_/s/ Jack A. Reitman_____
         Jack A. Reitman
Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

# DECLARATION OF ANASTASIA VEDROVA

I, Anastasia Vedrova, hereby declare as follows:

1.      I am over 18 years of age, and I am not a party to the above-captioned bankruptcy case or adversary proceeding. My business address is Landau Law LLP ("Firm"), 1880 Century Park East, Suite 1101, Los Angeles, CA 90067.

2.      On October 21, 2020, as shown by the attached Proof of Service, I served the *Complaint for Avoidance and Recovery of Voidable Transfers* [Docket No. 1]; the *Early Meeting of Counsel and Status Conference Instructions; Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004–1];* issued by the Clerk of the Court [Docket No. 3]; and the *Plaintiff's Notice of Required Compliance with FRBP 7026 and LBR 7026-1* on the defendant listed on the attached Proof of Service. I did so by placing true and correct copies of those documents in an envelope with first class postage thereon fully prepaid, addressed to the defendant at the address shown on the attached Proof of Service. On the same day correspondence is placed for collection and mailing in that outgoing mail box, such correspondence is deposited in the ordinary course of business in a United States Postal Service mailbox by a Firm employee.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed this 21st day of October 2020, at Los Angeles, California.

_____
Anastasia Vedrova

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 1

1 | JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
2 | MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
3 | JACK A. REITMAN (State Bar No. 283746)
jareitman@landaufirm.com
4 | LANDAU LAW LLP
1880 Century Park East, Suite 1101
5 | Los Angeles, California 90067
Telephone: (310) 557-0050
6 | Facsimile: (310) 557-0056

7 | Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
8 | Chapter 7 Trustee for Eagan Avenatti, LLP

9

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12 | In re

13 | EAGAN AVENATTI, LLP,

14 |                     Debtor.

15

16 | RICHARD A. MARSHACK, CHAPTER
17 | 7 TRUSTEE FOR EAGAN AVENATTI,
   | LLP,
18
   |                     Plaintiff,
19
20 |     v.

21 | CASCADE CAPITAL GROUP, LLC, a
   | Delaware limited liability company,
22
   |                     Defendant.
23

Case No.: 8:19-bk-13560-SC

Chapter 7

Adv. No.:

**COMPLAINT FOR AVOIDANCE AND
RECOVERY OF VOIDABLE
TRANSFERS**

24

25

26

27

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 1
3

Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("EA"). As the Trustee was not appointed until after EA filed bankruptcy on September 13, 2019 (the "Petition Date"), the Trustee does not have personal knowledge of the facts alleged below and therefore alleges those facts based upon the following: EA's bank records, information in the public record concerning EA, Michael J. Avenatti ("Avenatti") and his other related entities, information in the public record concerning defendant, information obtained from other proceedings in which EA, Avenatti or his other related entities were involved and information obtained from former clients of EA.

## JURISDICTION AND VENUE

1. In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa Ana Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, because the claims asserted arise under Title 11 of the United States Code or arise in or relate to the Chapter 7 case of the debtor, EA, currently pending in the Bankruptcy Court as Case No. 8:19-bk-13560-CB ("EA Bankruptcy Case"). The outcome of this adversary proceeding will have a significant effect on the Estate because it asserts claims for the return of property or the recovery of the value of assets fraudulently transferred by EA at the direction of its managing partner and affects the amount of money available for distribution to creditors of the Estate. The claims for relief in this Complaint constitute a core proceeding under 28 U.S.C. § 157(b)(2)(H). Regardless of whether this is a core proceeding, consent is given to the entry of final orders and judgment by the Bankruptcy Court. Defendant is notified that Fed. R. Bankr. P. 7012(b) requires defendant to state whether it does or does not consent to the entry of final orders and judgment by the Bankruptcy Court.

2. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the EA Bankruptcy Case is pending in this district and division. This Court also has personal jurisdiction over defendant.

## PARTIES

3. Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the EA Estate.

2

EXHIBIT 1
4

Landau Law LLP
Attorneys at Law
Los Angeles, California

4.    Defendant Cascade Capital, LLC ("Cascade" or "defendant"), is a limited liability company formed under the laws of Delaware, with a principal place of business in Seattle, Washington.

### GENERAL ALLEGATIONS

5.    EA was a California based litigation law firm formed in the mid-2000s.  At any given time, EA employed between seven to nine attorneys, and primarily handled plaintiff contingency matters, whereby the firm only received legal fees after a case was resolved in favor of EA's client.

6.    In 2011, Avenatti assumed control over the management of EA.  From at least January 1, 2012, and at all relevant times thereafter, Avenatti was the managing partner of EA and owned at least 75% of the firm directly or indirectly through his personal corporation, Avenatti & Associates, APC ("A&A").  As EA's managing partner, Avenatti at all relevant times controlled EA's business and financial affairs and had exclusive and unfettered access to its business and financial records (including its banking records).

7.    At all times relevant to this Complaint, Avenatti was an attorney of national notoriety, including previously having acted through EA as class-counsel in cases such as *Bahamas Surgery Center, LLC v. Kimberly-Clark Corporation, et al.* (involving defective surgical gowns) and *Greco v. NFL* (a series of consolidated lawsuits relating to Super Bowl XLV in Dallas, Texas) and representing high profile clients such as Stephanie Clifford (also known as "Stormy Daniels") and the alleged victims of R&B artist R. Kelly.

8.    EA received substantial revenue from its operations but also incurred substantial liabilities.  For example, in June 2011, EA was sued by its former co-counsel in a case, Stoll, Nussbaum & Polakov APC ("Stoll").  Stoll alleged that, in the case where EA and Stoll had been co-counsel, EA had received the entire settlement payment of $39 million from the defendants and had paid itself, another law firm, and the clients, but had wrongfully retained $5,465,314 to which Stoll was allegedly entitled under a fee-sharing agreement.  At all times between June 2011 and the Petition Date, Stoll was seeking payment from EA of the $5,465,314 in fees and costs allegedly owed under the fee-sharing agreement, plus punitive damages, interest, etc.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

EXHIBIT 1
5

9.      In 2012, EA began to default on its tax obligations.  For example, EA failed to file its partnership tax returns for 2011 and 2012 with the Internal Revenue Service ("IRS") until March and October of 2014, respectively.  EA simply never filed partnership tax returns with the IRS for tax years 2013 onwards.  EA also failed to pay its annual limited partnership fee to the California Franchise Tax Board (the "FTB") for 2011 and for every year from 2013 onwards.

10.      At the same time that EA was defaulting on its tax obligations and allegedly in possession of more than $5 million Avenatti had caused EA to wrongfully divert from Stoll, Avenatti caused EA to disburse a substantial amount of EA funds (either directly or through A&A or another of Avenatti's companies) to fuel Avenatti's personal expenses and support his opulent lifestyle, for example: (i) Avenatti's acquisition of a coffee company, owner of the "Tully's" coffee chain, which Avenatti operated through a company owned by him called Global Baristas US LLC ("Global Baristas"); (ii) Porsche GT3 and Mercedes-AMG GT3 auto racing through another company owned by him GB Autosport, LLC and other entities which owned, maintained and operated Porsche and Mercedes race cars for Avenatti's personal use in the United States and Europe;[1] (iii) a Ferrari for Avenatti's personal use (at approximately $4,000 a month); (iv) Avenatti's acquisition of an indirect ownership interest in a private jet through Passport 420, LLC; (v) shopping sprees at Neiman Marcus and other luxury retail stores (court records document American Express charges between $60,000 and $70,000 a month); (vi) an ocean front residence in Laguna Beach, California purchased for $7.2 million in 2011 and sold for $12.6 million in 2015; (vii) lavish trips to Mexico, Paris, and the French Riviera; (viii) making deposit and rent payments under an agreement to purchase a home on Lido Isle in Newport Beach, California for $15.75 million (which purchase never closed); and (ix) making substantial improvements to both the Laguna Beach house and the Lido Isle house.

11.      Given that EA was expending exorbitant amounts, directly or indirectly, to support Avenatti's opulent lifestyle and that EA received no benefit from the expenditures, it is unsurprising that EA ended up in financial difficulties.  Those difficulties manifested both in

_____

[1] EA also purchased a Porsche GT3 race car on Avenatti's behalf.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

EXHIBIT 1
6

1  nonpayment of additional debts and in EA seeking to obtain loans to fund its operations.

2      12.    On February 15, 2014, EA failed to pay the annual profit bonus due to Jason Frank

3  Law, PLC ("JFL") for 2013 under an independent contractor agreement between EA and JFL.  EA

4  subsequently failed to pay substantial additional amounts to JFL under the same agreement,

5  leading to JFL eventually obtaining a $10 million judgment for amounts EA failed to pay JFL

6  from 2014 through 2016.

7      13.    At or around the same time that EA failed to pay the 2013 bonus to JFL, Avenatti

8  was seeking a loan for EA from The Peoples Bank ("Peoples Bank"), a bank located in

9  Mississippi.  Avenatti stated that the loan was primarily for "working capital" for EA.  Avenatti

10  submitted fraudulent documents to the bank in order to obtain the loan, including a balance sheet

11  that overstated EA's bank account balance by approximately $450,000, and a fake partnership tax

12  return that overstated EA's 2012 income by approximately $8 million.  Even with the rosier

13  picture of EA's finances painted by the false documents, the bank required collateral pledges and a

14  personal guaranty to make a short-term loan of $2.75 million to EA.  The first Peoples Bank loan

15  was issued on March 14, 2014 and had a maturity date of June 15, 2014.

16      14.    The first Peoples Bank loan was repaid from the proceeds of a settlement achieved

17  by EA on behalf of a client in May 2014.  Just six months later, in November 2014, Avenatti was

18  again seeking a substantial loan from The Peoples Bank for EA's "case costs and working

19  capital."  Avenatti requested a $2.5 million line of credit, and again submitted fraudulent

20  documents to the bank in support of the request, including a balance sheet that overstated EA's

21  bank account balance by approximately $700,000.  However, again, even with the falsely

22  optimistic picture of EA's finances, the bank required guaranties and pledges to secure the loan,

23  and ultimately approved only a $500,000 one-year term loan, rather than the $2.5 million line of

24  credit requested by Avenatti.

25      15.    The second Peoples Bank loan was issued on December 12, 2014.  The loan was

26  secured by an assignment of the first $500,000 in attorneys' fees EA was due to receive from a

27  specific case.  EA received those fees in or around February 2015 but did not pay any portion of

28  the fees towards the Peoples Bank loan.  Nor did EA repay the loan by its maturity date of

Landau Law LLP
ATTORNEYS AT LAW
Los Angeles, California

5

EXHIBIT 1
7

1  December 12, 2015. It was only after the bank repeatedly demanded payment from Avenatti and

2  threatened to send the loan to collections, that EA finally repaid the second Peoples Bank loan,

3  approximately four months later.

4      16.    As set forth above, by the beginning of 2015, EA had already defaulted on multiple

5  tax obligations, was subject to a more than $5 million claim asserted by Stoll, was failing to pay

6  substantial amounts owed to JFL, and had fraudulently obtained multiple loans to finance its

7  operating costs. EA's inability to keep its "head above water" financially resulted in even more

8  desperate measures in 2015. In the first quarter of 2015, Avenatti diverted $4 million received by

9  EA pursuant to a client settlement for his personal use. At the same time, he caused EA to stop

10  paying payroll taxes to the IRS, taxes to the California Employment Development Department

11  ("EDD") and multiple trade creditors (e.g., providers of professional services associated with EA's

12  law practice). Between 2015 and 2017, EA accrued approximately $2.4 million in unpaid payroll

13  taxes – including approximately $1.3 million in trust fund taxes that EA had withheld from

14  employees' checks but never sent to the IRS.

15      17.    By September 13, 2015, EA was generally not paying its debts as they became due.

16  Several of the creditors who were not being paid have held unsecured claims against EA

17  continuously from at least September 13, 2015, through the Petition Date, including but not

18  limited to the IRS; the FTB; the EDD; and Baker, Keener & Nahra, LLP. These creditors hold

19  claims that are allowable in the EA Bankruptcy Case under 11 U.S.C. § 502. Indeed, by the

20  Petition Date, Avenatti had diverted for his personal use more than $10 million in clients' funds

21  (2015-18) and in excess of $16.5 million in EA funds.

22      18.    The avoidable transfers that are alleged in this Complaint could not reasonably

23  have been discovered by these creditors or EA's other creditors until less than one year before the

24  Petition Date. Avenatti had absolute control over EA's business and financial records and bank

25  accounts and intentionally did not share accurate information about EA's business affairs or

26  financial situation with third parties to avoid such persons from learning of his financial

27  machinations to the detriment of EA's legitimate creditors. The transfers at issue are payments of

28  money between private parties, so there is no public record of those transfers from which a

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

EXHIBIT 1
8

1   creditor could have learned of their existence.  Instead, a creditor would have to acquire access to

2   EA's bank statements and other financial records to learn of the transfers at issue and their

3   fraudulent nature.  Given Avenatti's willingness to falsify EA financial documents (as described

4   above in connection with the Peoples Bank loans and as described below in connection with the

5   first EA bankruptcy case) and his extreme resistance to producing accurate EA financial

6   documents (as described below in connection with the JFL arbitration and the receivership

7   proceeding), the creditors holding unsecured claims had no reasonable ability to obtain the

8   accurate financial records of EA necessary to discover the transfers at issue and their fraudulent

9   nature.

10          19.     In 2016, JFL filed an arbitration claim against EA for amounts owed under the

11  agreement between JFL and EA.  Since some of the amounts payable to JFL were based on the

12  amount of EA's revenue, the agreement entitled JFL to receive various EA financial documents

13  for the period from 2013 onwards.  JFL had been informally seeking those documents from

14  Avenatti for years without success.  It wasn't until JFL filed the arbitration proceedings and EA

15  was ordered by the arbitration panel to produce financial records that EA produced any such

16  records to JFL.  Even then, EA refused to provide complete documentation (for example, although

17  redaction was not permitted, EA redacted numerous entries on the bank statements that it

18  provided).  Ultimately, EA's persistent refusal to comply with discovery orders caused the

19  arbitration panel to impose heavy sanctions on EA.

20          20.     In February 2017, the arbitration panel ordered Avenatti and two other individuals

21  knowledgeable about EA's finances to appear for depositions on or before March 3, 2017.  The

22  order made clear that the panel would consider the imposition of severe sanctions (including

23  $10,000 sanctions against each individual personally) if Avenatti and the other individuals failed

24  to comply with the order.  Rather than appearing to give testimony regarding EA's finances,

25  Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the Middle

26  District of Florida on March 1, 2017, to stay the arbitration proceedings.

27          21.     Avenatti consented to EA being placed into Chapter 11 bankruptcy on March 10,

28  2017, and the case was subsequently transferred to the Honorable Catherine E. Bauer in the

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

EXHIBIT 1
9

1   Central District of California on May 16, 2017 (*In re Eagan Avenatti, LLP*, Case No. 8:17-bk-

2   11961-CB) ("2017 Bankruptcy").

3       22.     EA's Schedules of Assets and Liabilities filed in the 2017 Bankruptcy listed

4   approximately $19 million of unsecured debts owed by EA to approximately 33 different creditors

5   – without including any amounts owed to Stoll or JFL, or the millions that Avenatti had stolen

6   from EA clients.

7       23.     The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured

8   settlement approved by the bankruptcy court.  That structured settlement required EA, following

9   the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including the IRS, JFL,

10  and various other creditors.  Avenatti caused EA to misappropriate client funds to make the initial

11  payment due under the settlement.  Specifically, on March 14, 2018, EA received on behalf of one

12  of its clients a settlement payment of approximately $8 million.  Rather than paying the entire

13  amount to the client, as it was obligated to do, Avenatti diverted $4 million of those funds for his

14  own purposes and caused EA to transfer $2,828,423 of the those funds to the law firm

15  representing Avenatti in the 2017 Bankruptcy.  The law firm then distributed these funds to (1) the

16  IRS, as the initial payment towards its claim against EA, (2) EA's counsel in the 2017 Bankruptcy,

17  and (3) counsel for the Official Committee of Unsecured Creditors in the 2017 Bankruptcy.

18      24.     EA did not make any of the other payments owed under the settlement, except for a

19  payment of $75,000 to the IRS.  As a result of EA failing to make any payments to JFL, the

20  bankruptcy court entered a judgment in favor of JFL and against EA in the amount of $10 million

21  on May 22, 2018.

22      25.     JFL's judgment against EA was registered before the United States District Court

23  for the Central District of California on August 31, 2018 and was assigned to Chief Judge Virginia

24  A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES].

25      26.     As part of the district court proceeding, JFL moved for the appointment of an

26  independent receiver for the assets of EA.  Avenatti stipulated to the appointment of Brian Weiss

27  as the Receiver for EA.  Pursuant to that stipulation, on February 13, 2019, the District Court

28  entered a Receivership and Restraining Order against EA and Avenatti.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8

EXHIBIT 1
10

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

27.     Throughout the Receivership, Avenatti attempted to impede the Receiver in recovering EA financial documents, first stating that he would turn over such documents, and then later stating that he did not know where they were.  In or about April of 2019, it was discovered that Avenatti had caused EA's computer servers containing EA's books and records and other financial data to be moved to an off-site storage facility but refused to disclose this information to the Receiver for months.  Eventually, when the Receiver located these computer servers, they were turned over to the U.S. Government in connection with criminal charges against Avenatti.  Once the Receiver (and then later the Trustee) recovered the servers and forensic copies of the data contained therein, it was not possible to access the data due to the significant cost in doing so, and the fact that EA had only nominal available funds (the remainder had been "removed" by Avenatti).

28.     On March 22, 2019, the United States Attorney for the Central District of California filed a criminal complaint against Avenatti, initiating the criminal case known as *U.S. v. Avenatti*, United States District Court for the Central District of California, SACR19-00061-JVS ("California Criminal Case").[2]  The complaint in the California Criminal Case charged Avenatti with wire fraud for wrongfully diverting to his personal use millions of dollars belonging to EA's clients, willfully causing EA to not pay approximately $2.4 million in payroll taxes to the IRS, including $1,279,001 in trust fund taxes that had been withheld from EA employees' paychecks, causing EA to not file tax returns for the 2013 through 2017 tax years, bankruptcy crimes, bank fraud and other crimes.  On April 4, 2019, the Grand Jury in the California Criminal Case indicted Avenatti on 36 counts for, *inter alia*, wire fraud, tax evasion, tax fraud, bank fraud, aggravated identity theft, bankruptcy crimes, perjury, and the theft of millions of dollars from EA's former clients.

29.     On September 13, 2019, Brian Weiss, as the Receiver for EA, filed a voluntary

---

[2]  This case is defined as the "California Criminal Case" to differentiate it from the two separate criminal cases pending against Avenatti in New York.  On February 14, 2020, a jury in the Southern District of New York found Avenatti guilty of transmission of interstate communications with intent to extort (18 U.S.C. § 875(d)); attempted extortion (18 U.S.C. § 1951); and honest services wire fraud (18 U.S.C. § 1342, 1346) in *United States v. Avenatti*, No. 1:19-CR-373-PGG.  These charges are in connection with Avenatti's attempted extortion of Nike, Inc. for over $20 million.

1 | petition under Chapter 7 of Title 11 initiating this bankruptcy case.

2 | ***Transfers made by EA to Cascade***

3 |      30.    Between March 19, 2013, and January 11, 2017, Avenatti caused EA to make

4 | $183,370 in transfers (net) to Cascade for Avenatti's personal benefit ("EA Transfers").

5 | Specifically, these transfers were made as a part of Avenatti's acquisition/funding of Global

6 | Baristas, whose business was generally located in Seattle, Washington.  EA (and its creditors)

7 | received no value in exchange for the EA Transfers to Cascade.  Global Baristas was an entity

8 | owned and controlled by Avenatti, and EA had no ownership interest in Global Baristas.  A

9 | spreadsheet cataloging the EA Transfers is attached as **Exhibit 1**.  To the extent that any of the EA

10 | Transfers were from an EA trust account, those funds were not the property of an EA client.

11 | Instead, the funds belonged to EA and Avenatti had placed those funds into that account for the

12 | purpose of hindering, delaying or defrauding EA's creditors.

13 | **FIRST CLAIM FOR RELIEF**

14 | **(Against Defendant, To Avoid 7-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

15 | **Cal. Civ. Code §§ 3439.04(a)(1), 3439.07, and 3439.09(a), (c))**

16 |      31.    The Trustee incorporates by reference and realleges paragraphs 1-30 of this

17 | Complaint.

18 |      32.    During the seven-year period immediately preceding the Petition Date, Avenatti

19 | directed and caused EA to make transfers of its property, including money, to or for the benefit of

20 | defendant, as listed in **Exhibit 1**.  Those transfers are referred to herein as the "7-Year Transfers."

21 |      33.    The 7-Year Transfers were made by EA with the actual intent to hinder, delay, or

22 | defraud its creditors.  Specifically, Avenatti caused EA to make these transfers to or for the benefit

23 | of defendant to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA,

24 | even though Avenatti knew that EA was subject to substantial creditor claims and the transfers

25 | reduced the amount of funds available to pay these creditors, and knew or consciously or

26 | recklessly chose to ignore facts known to him that strongly suggested that EA was in default on

27 | multiple obligations.  Among other things, EA (i) had not filed federal tax returns since 2013; (ii)

28 | had not paid its annual limited partnership fee to the FTB for 2011 or 2013 onwards; (iii) was not

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  paying payroll taxes to the IRS; (iv) was wrongfully retaining trust fund taxes withheld from its

2  employees' checks; (v) was not paying taxes owed to the EDD; (vi) was refusing to pay Stoll the

3  more than $5 million owed to it that Avenatti had wrongful diverted for his personal use; (vii) was

4  not paying millions of dollars owed to its clients whose funds Avenatti had wrongfully diverted

5  for his personal use; (viii) was not paying the millions of dollars it owed to JFL under the

6  independent contractor agreement with JFL; (ix) was not filing state and federal tax returns; and

7  (x) was not paying the money it owed to multiple taxing authorities, including the IRS, the FTB,

8  and the EDD, including more than a million dollars in trust fund taxes EA collected from its

9  employees but failed to remit to the IRS.  During the seven-year period, EA also defaulted on

10  numerous other obligations, accrued millions of dollars of unsecured debt, and wrongfully

11  withheld, and ultimately misappropriated additional millions of dollars of client funds to pay a

12  small portion of its accrued debts.

13      34.    Defendant did not take any of the 7-Year Transfers in good faith and/or EA did not

14  receive reasonably equivalent value in exchange for the 7-Year Transfers.  Specifically, defendant

15  (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that

16  the transfers were of property or money belonging to EA because the transfers were identified as

17  emanating from that entity; (ii) knew or consciously or recklessly chose to ignore facts known to it

18  that strongly suggested that the value, if any, that defendant provided in exchange for those

19  payments was not for the benefit of and did not benefit EA or its creditors, and that such value, if

20  any, conferred no or less than reasonably equivalent value upon EA or its creditors.

21      35.    At all relevant times, the 7-Year Transfers were voidable under California Civil

22  Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims

23  against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include,

24  without limitation, the IRS, the FTB, the EDD, JFL, EA clients whose funds Avenatti had

25  wrongfully diverted from EA for his personal use, and Baker, Keener & Nahra, LLP.

26      36.     For the reasons described above, the voidable transfers alleged in this claim for

27  relief could not reasonably have been discovered by these creditors sooner than one year prior to

28  the Petition Date.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 1
13

**SECOND CLAIM FOR RELIEF**

**(Against Defendant, To Avoid 4-Year Transfers under 11 U.S.C. §§ 544(a), (b) and**

**Cal. Civ. Code §§ 3439.04(a) and 3439.07)**

37.    The Trustee incorporates by reference and realleges paragraphs 1-30 of this Complaint.

38.    During the four-year period immediately preceding the Petition Date, Avenatti directed and caused EA to make transfers of its property, including money, to or for the benefit of defendant, as listed in **Exhibit 1**. Those transfers are referred to as the "4-Year Transfers."

39.    The 4-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors. Specifically, Avenatti caused EA to make these transfers to or for the benefit of the defendant to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors, and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations. Among other things, EA (i) had not filed federal tax returns since 2013; (ii) had not paid its annual limited partnership fee to the FTB for 2011 or 2013 onwards; (iii) was not paying payroll taxes to the IRS; (iv) was wrongfully retaining trust fund taxes withheld from its employees' checks; (v) was not paying taxes owed to the EDD; (vi) was refusing to pay Stoll the more than $5 million owed to it that Avenatti had wrongful diverted for his personal use; (vii) was not paying millions of dollars owed to its clients whose funds Avenatti had wrongfully diverted for his personal use; (viii) was not paying the millions of dollars it owed to JFL under the independent contractor agreement with JFL; (ix) was not filing state and federal tax returns; and (x) was not paying the money it owed to multiple taxing authorities, including the IRS, the FTB, and the EDD, including more than a million dollars in trust fund taxes EA collected from its employees but failed to remit to the IRS. During the four-year period, EA also defaulted on numerous other obligations, accrued millions of dollars of unsecured debt, and wrongfully withheld, and ultimately misappropriated additional millions of dollars of client funds to pay a small portion of its accrued debts.

12

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 1
14

Case 8:20-ap-01147-SC    Doc 1    Filed 10/20/20    Entered 10/20/20 13:01:33    Desc
Main Document    Page 13 of 23

40.    Defendant did not take any of the 4-Year Transfers in good faith and/or EA did not receive reasonably equivalent value in exchange for the 4-Year Transfers.  Specifically, defendant (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfers were of property or money belonging to EA because the transfers were identified as emanating from that entity; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, that defendant provided in exchange for those payments was not for the benefit of and did not benefit EA or its creditors, and that such value, if any, conferred no or less than reasonably equivalent value upon EA or its creditors.

41.    At all relevant times, the 4-Year Transfers were voidable under California Civil Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include, without limitation, the IRS, the FTB, the EDD, JFL, EA clients whose funds Avenatti had wrongfully diverted from EA for his personal use, and Baker, Keener & Nahra, LLP.

**THIRD CLAIM FOR RELIEF**

**(Against Defendant, To Avoid 4-Year Transfers Made While EA Was Insolvent, under 11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.05 and 3439.07)**

42.    The Trustee incorporates by reference and realleges paragraphs 1-30 and 38 of this Complaint.

43.    At all times between September 13, 2015, and the Petition Date, EA was insolvent as it was not paying its debts as they became due in the ordinary course of business.

44.    EA received less than reasonably equivalent value in exchange for the 4-Year Transfers, because any goods or services provided in exchange for the 4-Year Transfers solely or primarily benefited Avenatti or his other entities rather than EA.

45.    At all relevant times, the 4-Year Transfers were voidable under California Civil Code §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against EA that are allowable against its Estate under 11 U.S.C. § 502.  These creditors include, without limitation, the IRS, the FTB, the EDD, JFL, EA clients whose funds Avenatti had wrongfully diverted from EA for his personal use, and Baker, Keener & Nahra, LLP.

13

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 1
15

**FOURTH CLAM FOR RELIEF**

**(Against Defendant, To Avoid 8-Year Transfers under 11 U.S.C. §§ 544(a), (b) and Cal. Civ. Code §§ 3439.04(a) and 3439.07)**

46.     The Trustee incorporates by reference and realleges paragraphs 1-30 of this Complaint.

47.     During the eight-year period immediately preceding the Petition Date, Avenatti directed and caused EA to make transfers of its property, including money, to or for the benefit of defendant, as listed in **Exhibit 1**. Those transfers are referred to as the "8-Year Transfers."

48.     The 8-Year Transfers were made by EA with the actual intent to hinder, delay, or defraud its creditors. Specifically, Avenatti caused EA to make these transfers to or for the benefit of defendant to fund Avenatti's opulent lifestyle and not to sustain or promote the business of EA, even though Avenatti knew that EA was subject to substantial creditor claims and the transfers reduced the amount of funds available to pay these creditors, and knew or consciously or recklessly chose to ignore facts known to him that strongly suggested that EA was in default on multiple obligations. Among other things, EA (i) had not filed federal tax returns since 2013; (ii) had not paid its annual limited partnership fee to the FTB for 2011 or 2013 onwards; (iii) was not paying payroll taxes to the IRS; (iv) was wrongfully retaining trust fund taxes withheld from its employees' checks; (v) was not paying taxes owed to the EDD; (vi) was refusing to pay Stoll the more than $5 million owed to it that Avenatti had wrongful diverted for his personal use; (vii) was not paying millions of dollars owed to its clients whose funds Avenatti had wrongfully diverted for his personal use; (viii) was not paying the millions of dollars it owed to JFL under the independent contractor agreement with JFL; (ix) was not filing state and federal tax returns; and (x) was not paying the money it owed to multiple taxing authorities, including the IRS, the FTB, and the EDD, including more than a million dollars in trust fund taxes EA collected from its employees but failed to remit to the IRS. During the eight-year period, EA also defaulted on numerous other obligations, accrued millions of dollars of unsecured debt, and wrongfully withheld, and ultimately misappropriated additional millions of dollars of client funds to pay a small portion of its accrued debts.

14

EXHIBIT 1
16

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

49.    Defendant did not take any of the 8-Year Transfers in good faith and/or EA did not receive reasonably equivalent value in exchange for the 8-Year Transfers.  Specifically, defendant (i) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the transfers were of property or money belonging to EA because the transfers were identified as emanating from that entity; (ii) knew or consciously or recklessly chose to ignore facts known to it that strongly suggested that the value, if any, that defendant provided in exchange for those payments was not for the benefit of and did not benefit EA or its creditors, and that such value, if any, conferred no or less than reasonably equivalent value upon EA or its creditors.

50.    At all relevant times, the 8-Year Transfers were voidable under California Civil Code §§ 3439.04(a) and 3439.07 by the IRS.  The IRS holds a substantial unsecured claim against EA that is allowable against its Estate under 11 U.S.C. § 502, and a significant portion of any funds the Trustee recovers on behalf of the Estate will be paid to the IRS on account of its claim.  Pursuant to federal jurisprudence, state statutes of repose like those set forth in California Civil Code § 3439.09 are inapplicable to the IRS, and those statutes of repose are likewise inapplicable to the Trustee when standing in the position of the IRS pursuant to 11 U.S.C. § 544(b).  Therefore, under applicable non-bankruptcy law, the Trustee may reach back to January 1, 2012, to avoid and recover the 8-Year Transfers on behalf of the IRS and other creditors of the Estate.

## FIFTH CLAIM FOR RELIEF

### (Against Defendant, To Recover and Preserve Avoided Transfers under 11 U.S.C. § 550(a)(1), (a)(2), and § 551)

51.    The Trustee incorporates by reference and realleges paragraphs 1-30, 32-36, 38-41, 43-45, and 47-50 of this Complaint.

52.    To the extent that defendant is an initial transferee of the transfers referred to in this Complaint and such transfers are avoided, defendant is strictly liable for their return and the Trustee is entitled to recover judgments in such amounts.

53.    To the extent that defendant is not the initial transferee of the transfers referred to in this Complaint, defendant (i) is a subsequent transferees of the initial transferee of such payments, and (ii) did not take such transfers for value and/or in good faith and/or without

15

EXHIBIT 1
17

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  knowledge of the voidability of such transfers.  Each of the transfers referred to in this claim for

2  relief is recoverable from defendant as a subsequent transferee of the transfers that Avenatti

3  directed and caused EA to make to the initial transferees.

4      54.    Under 11 U.S.C. § 551, any transfer avoided is automatically preserved for the

5  benefit of the Estate.

6      **WHEREFORE,** the Trustee, on behalf of the Estate, prays for judgment against defendant

7  as follows:

8      1.    On the First Claim for Relief, for a judgment against defendant that avoids the 7-

9  Year Transfers;

10     2.    On the Second Claim for Relief, for a judgment against defendant that avoids the 4-

11 Year Transfers;

12     3.    On the Third Claim for Relief, for a judgment against defendant that avoids the 4-

13 Year Transfers;

14     4.    On the Fourth Claim for Relief, for a judgment against defendant that avoids the 8-

15 Year Transfers

16     5.    On the Fifth Claim for Relief, for a judgment against defendant that awards

17 damages in an amount equal to the value of the transfers avoided under the First through Fourth

18 Claims for Relief and/or that preserves the avoided transfers for the benefit of the Estate;

19     6.    For pre- and post-judgment interest at the applicable legal rate on all damages and

20 sums awarded to the Trustee; and

21     7.    For such other relief as the Court deems just and proper.

22

23 Dated: October 20, 2020                     LANDAU LAW LLP

24                                             By    /s/ Jack A. Reitman
                                                     Jack A. Reitman
25                                             Special Litigation Attorneys for
                                               Plaintiff Richard A. Marshack,
26                                             Chapter 7 Trustee for Eagan Avenatti, LLP

27

28

16

EXHIBIT 1
18

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT 1

EXHIBIT 1
19

**Eagan Avenatti LLP**
**Transfers to Cascade Capital Group**

| Date of Transfer | Amount of EA Transfer to Cascade Capital | EA Account |
|---|---|---|
| 3/19/2013 | -$250,000.00 | EA CBT 8451 |
| 6/26/2014 | $15,640.00 | EA CBT 8461 |
| 6/26/2014 | $368,496.00 | EA CBT 8461 |
| 2/5/2015 | $18,000.00 | EA CBT 2851 |
| 9/24/2015 | -$79,239.00 | EA CBT 2851 |
| 9/24/2015 | -$170,761.00 | EA CBT 2851 |
| 6/17/2016 | $213,099.00 | EA CBT 2851 |
| 6/17/2016 | $268,135.00 | EA CBT 2851 |
| 1/11/2017 | -$200,000.00 | EA CBT 2851 |

**Net Transferred Out to**
**Cascade Capital:**          **$183,370.00**

EXHIBIT 1
17
EXHIBIT 1
20

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br><br>Richard A. Marshack, Chapter 7 Trustee for Eagan Avenatti, LLP | **DEFENDANTS**<br><br>Cascade Capital Group LLC,<br>a Delaware limited liability  company |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>John P. Reitman, Monica Rieder, Jack A. Reitman<br>Landau Law LLP,1880 Century Park East, Suite 1101,<br>Los Angeles, CA 90067 | **ATTORNEYS** (If Known) |

| **PARTY** (Check One Box Only) | **PARTY** (Check One Box Only) |
|---|---|
| ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☑ Trustee | ☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☑ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance and recovery of voidable transfers; 11 U.S.C. 544, 550, 551; Cal. Civ. Code 3439.04, 3439.05, 3439.07, 3439.09

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation,
　　　actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation
　　　(other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☑ 02-Other (e.g. other actions that would have been brought in state court
　　　if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand  $183,370.00 |
| Other Relief Sought | |

EXHIBIT 1
21

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Eagan Avenatti, LLP | BANKRUPTCY CASE NO.<br>8:19-bk-13560-SC | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District | DIVISION OFFICE<br>Santa Ana | NAME OF JUDGE<br>Scott C Clarkson |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Jack A. Reitman | | |
| DATE<br><br>10/20/20 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Jack A. Reitman | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located.  Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate.  There also may be lawsuits concerning the debtor's discharge.  If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF).  (CM/ECF captures the information on Form 1040 as part of the filing process.)  When completed, the cover sheet summarizes basic information on the adversary proceeding.  The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court.  The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney).  A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.**  Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.**  Give the names and addresses of the attorneys, if known.

**Party**.  Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.**  Enter the dollar amount being demanded in the complaint.

**Signature.**  This cover sheet must be signed by the attorney of record in the box on the second page of the form.  If the plaintiff is represented by a law firm, a member of the firm must sign.  If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

EXHIBIT 1
22

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JOHN P. REITMAN (State Bar No. 80579)<br>jreitman@landaufirm.com<br>MONICA RIEDER (State Bar No. 263250)<br>mrieder@landaufirm.com<br>JACK A. REITMAN (State Bar No. 283746)<br>jareitman@landaufirm.com<br>LANDAU LAW LLP<br>1880 Century Park East, Suite 1101<br>Los Angeles, California 90067<br>Telephone: (310) 557-0050<br>Facsimile: (310) 557-0056<br>*Attorney for Plaintiff*   Richard A. Marshack, Ch. 7 Trustee | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| In re:<br>EAGAN AVENATTI, LLP,<br><br><br><br><br>                                                       Debtor(s). | CASE NO.: 8:19-bk-13560-SC<br><br>CHAPTER: 7<br><br>ADVERSARY NO.: |
|---|---|
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br><br><br>                                          Plaintiff(s)<br>                           Versus<br><br>CASCADE CAPITAL GROUP, LLC, a Delaware limited liability company,<br><br><br><br>                                          Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING**<br>**[LBR 7004-1]** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint.  You must also serve a copy of your written response on the party shown in the upper left-hand corner of this page.  The deadline to file and serve a written response is _____.  If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| Hearing Date: _____<br>Time: _____<br>Courtroom: _____ | **Address:**<br>☐  255 East Temple Street, Los Angeles, CA 90012<br>☐  3420 Twelfth Street, Riverside, CA 92501<br>☒  411 West Fourth Street, Santa Ana, CA 92701<br>☐  1415 State Street, Santa Barbara, CA 93101<br>☐  21041 Burbank Boulevard, Woodland Hills, CA 91367 |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                              Page 1                              **F 7004-1.SUMMONS.ADV.PROC**

EXHIBIT 1
23

**You must comply with LBR 7016-1, which requires you to file a joint status report and to appear at a status conference.**  All parties must read and comply with the rule, even if you are representing yourself.  You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference.  A court-approved joint status report form is available on the court's website (LBR form F 7016-1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016-1.STATUS.REPORT.ATTACH).  If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference.  **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: _____

By: _____
Deputy Clerk

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:


A true and correct copy (1) of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


_____    _____    _____
Date                          Printed Name                         Signature

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                              Page 3                              **F 7004-1.SUMMONS.ADV.PROC**

EXHIBIT 1
25

EXHIBIT 2

## UNITED STATES BANKRUPTCY COURT

## Early meeting of Counsel and Status Conference Instructions

1. **Service of Order.**  A copy of this Order re: Rule 26(f) Meeting, Initial Disclosures, and Scheduling Conference must be served with the summons and complaint.  The proof of service of the summons and complaint must indicate that a copy of this order was served therewith.

2. **Local Bankruptcy Rule 7026-1.**  Compliance with Local Bankruptcy Rule 7026-1 (ALBR 7026-1") is required in ALL adversary proceedings.

3. **Rule 26(f) Meeting.**  Unless all defendants default, the parties must meet and confer pursuant to Rule 26(f) of the Federal Rules of Civil Procedure (ARule 26(f) Meeting@) at least 21 days before the status conference date set forth in the summons.  **The status conference set forth in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this adversary proceeding.**

   The parties are jointly responsible for arranging and attending the Rule 26(f) Meeting, which may be conducted in person or by telephone.  During the Rule 26(f) Meeting, the parties must, at a minimum: (a) discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case; (b) make or arrange for the initial disclosures required by Rule 26(a)(1); and ( c) develop a proposed discovery plan.  The discussion of claims and defenses must be substantive and meaningful.  The parties are directed to approach the Rule 26(f) Meeting cooperatively and in good faith.

4. **Initial Disclosures.**  Rule 26(a)(1) states that a party must, without awaiting discovery request, provide to other parties:

   a. The name and, if known, the address and telephone number for each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses,

EXHIBIT 2
26

unless the use would be solely for impeachment.

    b.   A copy of - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

    c.   A computation of each category of damages claimed by the disclosing party - who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

    d.   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

F.R.Civ.P.26(a)(1)(A).  Rule 26(a)(1) requires a party to make its initial disclosures based on the

information that is reasonably available to it.  A party is not excused from making its disclosures

because it has not fully completed its investigation of the case or because it challenges the

sufficiency of another party=s disclosures or because another party has not made its disclosures.

F.R.Civ.P.26(a)(1)(E).

   **5.**  **Alternative Dispute Resolution (AADR@).**  The parties must explore the feasibility of

ADR to reach a settlement or early resolution of the adversary proceeding.  The specific reasons

for any decision not to participate in a form of early ADR must be explained in the Joint Status

Report.  If the parties elect not to participate in an early ADR effort, the Court may nonetheless

direct the parties to ADR before trial

   **6.**  **Discovery Plan.**  At the Rule 26(f) Meeting, the parties must also discuss issues about

preserving discoverable information and develop a proposed discovery plan.  The discussion

regarding discovery following the initial disclosures must address the relevance of the discovery

sought and the sequence and timing of such discovery, including whether the discovery will be

conducted informally or formally.  The deadlines in the discovery plan must be mutually

EXHIBIT 2
27

agreeable, with a view to achieve resolution of the case with a minimum of expense and delay.

7.  **Joint Status Report.**  A status report must be filed within the time frames specified

within LBR 7016-1(a)(2).    The Joint Status Report must contain the information set forth in

LBR 7016-1(a)(2), and a statement that the parties have completed the Rule 26(f) Meeting and

made the initial disclosures required by Rule 26(a)(1).  The Joint Status Report shall also serve as

the written report of the Rule 26(f) Meeting.  If Defendant(s) have not filed and served an answer

to the Complaint, a Unilateral Status report is due seven (7) days prior to the first status

conference hearing.

8.  **Status Conference/Rule 16(b) Scheduling Conference.**  At the Rule 16(b) Scheduling

Conference, the Court will review the discovery plan set forth in the Joint Status Report and set

appropriate deadlines.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status

Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all

matters to be covered.

9.  **Default.**  If no response to the complaint is timely filed, plaintiff should request entry of

default by the clerk prior to the status conference date set forth in the summons. F.R.Civ.P.55(a).

Plaintiff may also request entry of a default judgment by filing and serving an appropriate

motion. F.R.Civ.P.55(b)(2).

10. **Sanctions.  Failure to comply with these instructions may subject the responsible**

**party and/or counsel to sanctions, which may include dismissal of the adversary**

**proceeding.  The failure of either party to cooperate in the preparation of timely filing of a**

**Joint Status Report or appear at the status conference may result in the imposition of**

**sanctions under LBR 7016-1(f) or (g).**

*///*

EXHIBIT 2
28

**11. <u>Joint Pre-Trial Order</u>.  Failure to timely file a Joint Pre-Trial order may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding.  The failure of either party to cooperate in the preparation of timely filing of a Joint Pre-Trial Conference or appear at the Joint Pre-Trial Conference may result in the imposition of sanctions under LBR 7016-1(f) or (g).**

Honorable Scott C. Clarkson
United States Bankruptcy Judge

EXHIBIT 2
29

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Jack A. Reitman<br>Landau Law LLP<br>1880 Century Park East<br>Suite 1101<br>Los Angeles, CA 90067<br><br>310–557–0050<br><br><br><br>_Plaintiff or Attorney for Plaintiff_ | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA**

| In re:<br><br>Eagan Avenatti, LLP<br><br><br>Debtor(s). | CASE NO.:  8:19–bk–13560–SC<br><br>CHAPTER:  7<br><br>ADVERSARY NUMBER: 8:20–ap–01147–SC |
|---|---|
| Richard A. Marshack<br><br>Plaintiff(s)<br><br>Versus<br><br>Cascade Capital Group, LLC<br><br>Defendant(s) | **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper–left–hand corner of this page. The deadline to file and serve a written response is **11/19/2020.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| Date: | **January 6, 2021** |
| Time: | **01:30 PM** |
| Hearing Judge: | **Scott C Clarkson** |
| Location: | **411 W Fourth St., Crtrm 5C, Santa Ana, CA 92701** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2016_                              Page 1                    **F 7004–1.SUMMONS.ADV.PROC**

EXHIBIT 2
30

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status
conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the
other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before
a status conference. A court–approved joint status report form is available on the court's website (LBR form F
7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F
7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with
the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the
status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may
also fine you or impose other sanctions if you fail to appear at a status conference.**


**KATHLEEN J. CAMPBELL
CLERK OF COURT**


Date of Issuance of Summons and Notice of Status Conference in Adversary Proceeding: <u>October 20, 2020 </u>


By: _____<u>"s/" Nickie Bolte</u>_____

Deputy Clerk



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2016_                                     Page 2                        **F 7004–1.SUMMONS.ADV.PROC**

EXHIBIT 2
31

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____         _____
*Date*                          *Printed Name*                                       *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2016*                                                  **F 7004–1.SUMMONS.ADV.PROC**

EXHIBIT 2
32

EXHIBIT 3

1    JOHN P. REITMAN (State Bar No. 80579)
     jreitman@landaufirm.com
2    MONICA RIEDER (State Bar No. 263250)
     mrieder@landaufirm.com
3    JACK A. REITMAN (State Bar No. 283746)
     jareitman@landaufirm.com
4    LANDAU LAW LLP
     1880 Century Park East, Suite 1101
5    Los Angeles, California 90067
     Telephone: (310) 557-0050
6    Facsimile: (310) 557-0056

7    Special Litigation Attorneys
     Plaintiff Richard A. Marshack,
8    Chapter 7 Trustee for Eagan Avenatti, LLP

9

         **UNITED STATES BANKRUPTCY COURT**
10
      **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**
11

12   In re                                Case No. 8:19-bk-13560-SC

13   EAGAN AVENATTI, LLP,                 Chapter 7

14              Debtor                    Adv. No. 8:20-ap-01147-SC

15                                        **PLAINTIFF'S NOTICE OF REQUIRED
                                          COMPLIANCE WITH FRBP 7026 AND
16                                        LBR 7026-1**

17   RICHARD A. MARSHACK, CHAPTER 7       **Status Conference Date and Time:**
     TRUSTEE FOR EAGAN AVENATTI, LLP,
18                                        Date:   January 6, 2021
                Plaintiff,               Time:  1:30 p.m.
19                                        Place: Courtroom 5C
     v.                                          411 W Fourth St.
20                                                Santa Ana, CA 92701
     CASCADE CAPITAL GROUP, LLC, a
21   Delaware limited liability company,

22              Defendant.

23

24

25

26

27

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 3
33

1

2

**TO ALL DEFENDANTS:**

**PLEASE TAKE NOTICE** that Richard A. Marshack, Chapter 7 Trustee for Eagan

3  Avenatti, LLP, and the plaintiff in the above-captioned adversary proceeding hereby gives notice

4  that compliance with the requirements under Rule 7026 of the Federal Rules of Bankruptcy

5  Procedure as well as Local Bankruptcy Rule ("LBR") 7026-1 is required.  A copy of LBR 7026-1

6  is attached hereto as Exhibit "A."

7

8  Dated: October 21, 2020

LANDAU LAW LLP

9

10

By____/s/ Jack A. Reitman_____

Jack A. Reitman

11

Special Litigation Attorneys for

12

Plaintiff Richard A. Marshack,

13

Chapter 7 Trustee for Eagan Avenatti, LLP

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

EXHIBIT 3
34

# EXHIBIT A

EXHIBIT 3
35

LBR 7026-1

(2)  Other Parties.  Any party other than plaintiff who has not received plaintiff's proposed pretrial stipulation within the time limits set forth in subsection (c) of this rule must prepare, file, and serve at least 14 days prior to the trial or pretrial conference, if one is ordered, a declaration attesting to plaintiff's failure to prepare and serve a proposed pretrial stipulation in a timely manner.

(f)  **Sanctions for Failure to Comply with Rule.**  In addition to the sanctions authorized by F.R.Civ.P. 16(f), if a status conference statement or a joint proposed pretrial stipulation is not filed or lodged within the times set forth in subsections (a), (b), or (e), respectively, of this rule, the court may order one or more of the following:

(1)  A continuance of the trial date, if no prejudice is involved to the party who is not at fault;

(2)  Entry of a pretrial order based conforming party's proposed description of the facts and law;

(3)  An award of monetary sanctions including attorneys' fees against the party at fault and/or counsel, payable to the party not at fault; and/or

(4)  An award of non-monetary sanctions against the party at fault including entry of judgment of dismissal or the entry of an order striking the answer and entering a default.

(g)  **Failure to Appear at Hearing or Prepare for Trial.**  The failure of a party's counsel (or the party, if not represented by counsel) to appear before the court at the status conference or pretrial conference, or to complete the necessary preparations therefor, or to appear at or to be prepared for trial may be considered an abandonment or failure to prosecute or defend diligently, and judgment may be entered against the defaulting party either with respect to a specific issue or as to the entire proceeding, or the proceeding may be dismissed.

## LBR 7026-1.  DISCOVERY

(a)  **General.**  Compliance with FRBP 7026 and this rule is required in all adversary proceedings.

(1)  Notice.  The plaintiff must serve with the summons and complaint a notice that compliance with FRBP 7026 and this rule is required.

(2)  Proof of Service.  The plaintiff must file a proof of service of this notice together with the proof of service of the summons and complaint.

(b)  **Discovery Conference and Disclosures.**

(1)  Conference of Parties.  Unless all defendants default, the parties must conduct the meeting and exchange the information required by FRBP 7026 within the time limits set forth therein.  Unless otherwise ordered, the initial status conference

EXHIBIT A
2
EXHIBIT 3
36

constitutes the "scheduling conference" referred to in FRCP 26(f)(1) (incorporated by FRBP 7026).

(2)     Joint Status Report.  Within 7 days after such meeting, the parties must prepare a joint status report containing the information set forth in LBR 7016-1(a)(2).  The joint status report will serve as the written report of the meeting required by FRBP 7026.

**(c)      Failure to Make Disclosures or Cooperate in Discovery.**

(1)     General.  Unless excused from complying with this rule by order of the court for good cause shown, a party must seek to resolve any dispute arising under FRBP 7026-7037 or FRBP 2004 in accordance with this rule.

(2)     Meeting of Parties.  Prior to the filing of any motion relating to discovery, the parties must meet in person or by telephone in a good faith effort to resolve a discovery dispute.  It is the responsibility of the moving party to arrange the conference.  Unless altered by agreement of the parties or by order of the court for cause shown, the opposing party must meet with the moving party within 7 days of service upon the opposing party of a letter requesting such meeting and specifying the terms of the discovery order to be sought.

(3)     Moving Papers.  If the parties are unable to resolve the dispute, the party seeking discovery must file and serve a notice of motion together with a written stipulation by the parties.

(A)    The stipulation must be contained in 1 document and must identify, separately and with particularity, each disputed issue that remains to be determined at the hearing and the contentions and points and authorities of each party as to each issue.

(B)    The stipulation must not simply refer the court to the document containing the discovery request forming the basis of the dispute.  For example, if the sufficiency of an answer to an interrogatory is in issue, the stipulation must contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions, separately stated.

(C)    In the absence of such stipulation or a declaration of a party of noncooperation by the opposing party, the court will not consider the discovery motion.

(4)     Cooperation of Parties; Sanctions.  The failure of any party either to cooperate in this procedure, to attend the meeting of parties, or to provide the moving party the information necessary to prepare the stipulation required by this rule within 7 days of the meeting of parties will result in the imposition of sanctions, including the sanctions authorized by FRBP 7037 and LBR 9011-3.

EXHIBIT A
3
EXHIBIT 3
37

LBR 7026-2

(5)    Contempt.  LBR 9020-1 governing contempt proceedings applies to a discovery motion to compel a non-party to comply with a deposition subpoena for testimony and/or documents under FRBP 7030 and 7034.

## LBR 7026-2.  DISCOVERY DOCUMENTS – RETENTION, FILING, AND COPIES

(a)    **Retention by Propounding Party.**  The following discovery documents and proof of service thereof must not be filed with the clerk until there is a proceeding in which the document or proof of service is in issue:

(1)    Transcripts of depositions upon oral examination;
(2)    Transcripts of depositions upon written questions;
(3)    Interrogatories;
(4)    Answers or objections to interrogatories;
(5)    Requests for the production of documents or to inspect tangible things;
(6)    Responses or objections to requests for the production of documents or to inspect tangible things;
(7)    Requests for admission;
(8)    Responses or objections to requests for admission;
(9)    Notices of Deposition, unless filing is required in order to obtain issuance of a subpoena in another district; and
(10)  Subpoena or Subpoena Duces Tecum.

(b)    **Period of Retention for Discovery Documents.**  Discovery documents must be held by the attorney for the propounding party pending use pursuant to this rule for the period specified in LBR 9070-1(b) for the retention of exhibits, unless otherwise ordered by the court.

(c)    **Filing of Discovery Documents.**

(1)    When required in a proceeding, only that part of the document that is in issue must be filed with the court.

(2)    When filed, discovery documents must be submitted with a notice of filing that identifies the date, time, and place of the hearing or trial in which it is to be offered.

(3)    Original deposition transcripts are treated as trial exhibits and must be delivered to the judge for use at the hearing or trial.  The original deposition transcript and a copy must be lodged with the clerk pursuant to LBR 7030-1(b).

(d)    **Copies of Discovery Documents.**

(1)    Unless an applicable protective order otherwise provides, any entity may obtain a copy of any discovery document described in subsection (a) of this rule by making a written request therefor to the clerk and paying duplication costs.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**LANDAU LAW LLP, 1880 Century Park East, Suite 1101, Los Angeles, CA 90067.**

A true and correct copy of the foregoing document entitled (*specify*):
***1. Complaint for Avoidance and Recovery of Voidable Transfers***
***2. Early Meeting of Counsel and Status Conference Instructions; Summons and Notice of Status Conference in Adversary Proceeding [LBR 7004-1]***
***3. Plaintiff's Notice of Required Compliance with FRBP 7026 and LBR 7026-1***
will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **_____,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **October 21, 2020,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Cascade Capital Group, LLC**
Agent for Service of Process Jody Cannady
19015 111th St. E
Bonney Lake, WA 98391-8078

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)**_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 21, 2020 | Anastasia Vedrova | /s/ Anastasia Vedrova |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**LANDAU LAW LLP, 1880 Century Park East, Suite 1101, Los Angeles, CA 90067.**

A true and correct copy of the foregoing document entitled (*specify*): **_Summons Service Executed Re Service of:_**
**_1. Complaint for Avoidance and Recovery of Voidable Transfers_**
**_2. Early Meeting of Counsel and Status Conference Instructions; Summons and Notice of Status Conference in_**
**_Adversary Proceeding [LBR 7004-1]_**
**_3. Plaintiff's Notice of Required Compliance with FRBP 7026 and LBR 7026-1_**
will be served or was served **(a) on the judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **October 21, 2020,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Richard A Marshack (TR)**   pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Jack A. Reitman**   jareitman@landaufirm.com,
  srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **October 21, 2020,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**United States Trustee (SA)**
411 W Fourth St., Suite 7160
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)**_____,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 21, 2020 | Anastasia Vedrova | /s/ Anastasia Vedrova |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**